IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NATHAN L.,**[1] <br><br>                Plaintiff, <br><br> v. <br><br> **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**, <br><br>                Defendant. | Civ. No. 6:22-cv-00786-MC <br><br> **OPINION AND ORDER** |

**MCSHANE, Judge**:

  Plaintiff Nathan L. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

  Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) finding Plaintiff has performed substantial gainful activity ("SGA"); (2) discounting Plaintiff's subjective symptom testimony; (3) discounting lay witness testimony; (4) discrediting the assessment of Plaintiff's treating mental health providers; and (5) failing to include all Plaintiff's limitations in the residual functional capacity ("RFC"). Pl.'s Br. 3–19, ECF No. 11. For the reasons outlined

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

below, the Commissioner's decision is REVERSED and this matter is REMANDED for immediate payment of benefits.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on November 30, 2018, alleging disability since October 3, 2017. Tr. 63, 79. Both claims were denied initially and upon reconsideration. Tr. 77, 93, 112, 129. Plaintiff requested a hearing before an ALJ and appeared before the Honorable Mark Triplett on May 12, 2021. Tr. 29–60. In a written decision dated June 3, 2021, ALJ Triplett determined that Plaintiff was not disabled under the Social Security Act. Tr. 15–23. Plaintiff sought review from the Appeals Council; the Appeals Council declined. Tr. 1.

Plaintiff is 28 years old and has struggled with mental health issues for most of his life. Tr. 63, 392[2], 563[3], 569[4], 616[5], 854[6], 932[7], 939[8]. He alleges disability due to depression, anxiety, bipolar disorder, and schizoid personality disorder.[9] Tr. 72, 257, 309, 317. Plaintiff also has a diagnosis of oppositional defiance disorder. Tr. 877. Plaintiff has his GED; he was expelled from traditional high school after a physical altercation with another student. Tr. 77, 913.

---

[2] Plaintiff reports that he attempted suicide by hanging at age 12 or 13.
[3] Plaintiff reports that his depression began in 2016 and has been getting worse over time.
[4] Plaintiff reports a suicide attempt in 2017 as well as a suicide plan that he did not follow through with in 2015.
[5] Plaintiff believes the onset of Bipolar Disorder I was at age 16. Plaintiff "has never been hospitalized due to mental health concerns, but he endorsed that members of his family have threatened him with this during manic episodes."
[6] Plaintiff "reports behavioral concerns from his childhood, leading to him being expelled when he began high school." He reports that symptoms of social phobia began around age 22.
[7] Plaintiff reports that he was tested for oppositional defiance disorder as a child and likely met the criteria, but that his mother resisted the formal diagnosis.
[8] In December 2020, Plaintiff continues to experience suicidal ideation.
[9] Plaintiff also originally alleged disability due to blindness or low vision. Tr. 257. He testified at the May 12, 2021 hearing that this issue has resolved. Tr. 47–48.

Plaintiff has worked as a casting inspector, warehouse worker, inventory control clerk, deli clerk, and a sporting good sales clerk. Tr. 55. Plaintiff's work history alludes to his difficulty in maintaining full-time employment; the longest time he has been consistently employed by the same company appears to be from July 2016 until October 2017. Tr. 76–77.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

**I.    Plaintiff's Unsuccessful Work Attempt**

At step one, an ALJ must determine if a claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, regardless of their medical condition, age, or work experience. 20 C.F.R. § 404.1520(b). However, when a claimant attempts to work but is forced to stop due to their impairment, this is considered an unsuccessful work attempt and will not show that the claimant is able to do SGA. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). An unsuccessful work attempt is a period of six months or less of work that comes after "a significant break in the continuity of . . . work." 20 C.F.R. §§ 404.1574(c), 416.974(c). "Prior work [is] 'discontinued' for a significant period if [the claimant was] out of work at least 30 consecutive days," or when the claimant was "forced to change to another type of work or another employer" due to their impairment. 20 C.F.R. §§ 404.1574(c)(2), 416.974(c)(2). The work must end or be reduced to below SGA levels either due to the

claimant's impairment or "because of the removal of special conditions that took into account [their] impairment and permitted [them] to work." 20 C.F.R. §§ 404.1574(c)(3), 416.974(c)(3). An ALJ may not use an unsuccessful work attempt to discredit a claimant's subjective symptom testimony. Rather, an unsuccessful work attempt may bolster a claimant's allegations of disabling pain. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007).

Here, the ALJ found that Plaintiff had engaged in substantial gainful activity from January 2020 to March 2020. Tr. 17. During that time, Plaintiff worked for about two months, inspecting packages for air bubbles or defects. Tr. 38–39. Plaintiff testified that while working, he was having regular panic attacks at work and would "disappear" for an hour to try to calm down. Tr. 40. He stated that his supervisor spoke to him on two or three occasions about the disappearances and that he was told if it happened again he would get written up. Tr. 40. Plaintiff then left the job. Tr. 40.

Plaintiff argues that the ALJ erred by failing to find that this brief period of employment was an unsuccessful work attempt. Pl.'s Br. 3–5. The Court agrees. Plaintiff was out of work for more than thirty consecutive days prior to working as a casting inspector in 2020. His attempt lasted less than six months, from January to March 2020. His employment ended because of the severity of his mental health symptoms. Plaintiff's employment in 2020 was an unsuccessful work attempt.

The Commissioner argues that because the ALJ continued with the five-step process, any error at Step One was harmless. Def.'s Br. 2–3, ECF No. 14; *cf. Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("[S]tep two was decided in Buck's favor…. He could not possible have been prejudiced."). However, in finding that Plaintiff had engaged in substantial gainful

activity, the ALJ then used that two-month period of employment to discredit Plaintiff's subjective symptom testimony and the statement of Plaintiff's treating mental health providers. *See* Tr. 21 ("Such work activity would not have been possible under the limitations set forth by Dr. Smith, even on a periodic basis."). To the extent that the ALJ relied on Plaintiff's unsuccessful work attempt in discrediting his subjective symptom testimony as well as lay witness testimony and other medical evidence, this was harmful error.

> **II.     Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ improperly discredited his testimony regarding the nature and intensity of his limitations. Pl.'s Br. 15–18. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ determines, "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). If the first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ next determines the intensity and persistence of symptoms by considering "all of the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "The ALJ can reject the claimant's testimony about the severity of [their] symptoms *only* by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1015 (emphasis added).

Plaintiff testified that due to his anxiety and recurrent panic attacks, he is unable to maintain full-time employment. Tr. 40–41. He stopped working in 2017 due to "daily panic attacks and freak outs at home and at work." Tr. 257. Plaintiff generally experiences two to three

panic attacks a month, lasting for twenty minutes or longer. Tr. 564. He reported a week in 2021 where he experienced five panic attacks, the worst being while shopping at Costco. Tr. 880. Plaintiff stated that one of his triggers for panic attacks is being around people. Tr. 41. He testified that just going to the store or even his weekly therapy session may induce a panic attack. Tr. 41–42 ("95 percent of the time I have a panic attack before I get [to therapy] or when I am there."). As noted above, Plaintiff testified that he left his employment in 2020 because of these panic attacks. Tr. 40. Plaintiff also testified that due to his oppositional defiance disorder, "little things can set [him] off." Tr. 47. He was expelled from high school due to behavioral issues and, according to the Millon Clinical Multiaxial Inventory-IV ("MCMI-IV") from June 3, 2020, frequently acts "in an oppositional and irritable manner." Tr. 44, 1052.

Despite his limitations, Plaintiff challenges his anxiety regularly and, with the help of regular therapy, remains forward-thinking. Plaintiff and his counselor worked together to create a "fear hierarchy" of eleven activities that Plaintiff fears but is working towards achieving. Tr. 863–64. Plaintiff's least-feared activities include being in the same room as family members and socializing with one or two family members. Tr. 864. His most-feared activities include being in a group of ten or more people socializing at a park and skydiving, when he would have to actively listen to an instructor in a small plane with a group of unknown people. Tr. 863. Plaintiff then spent the next few weeks and months challenging the lower fears and engaging in exposure therapy. He spent time socializing with one or two family members and within a few weeks was able to spend 50-60 minutes in the same room as two family members. Tr. 845, 865. While Plaintiff experienced some distress when there were more people than originally planned at his family's house for the Fourth of July, he continued to work on engaging family members in

conversation. Tr. 848, 848. Plaintiff often experiences severe anxiety while shopping, especially at the checkout line, but continues to attempt shopping trips, even when they end in panic attacks. *See, e.g.*, tr. 851–52, 914–16, 1024, 1032. Plaintiff and his counselor practiced exposure therapy with new places by walking around the office when no one was there. Tr. 937. Even then, Plaintiff's counselor noted that he showed physical signs of anxiety and panic attack. Tr. 937.

Plaintiff "'hopes to not be' on disability" for the rest of his life. Tr. 937. Rather, he "plans to continue working to lower anxiety and panic attack[s]" and "plans to return to school in [the] future." Tr. 937. Plaintiff has researched the diagnostic imaging program at Linn-Benton Community College in hopes of becoming a sonographer. Tr. 913, 928, 1022, 1038. Plaintiff acknowledged that seeing patients on a daily basis would challenge his anxiety, but felt it was an achievable goal because there would only be a set number of people per day and he would work in a quiet room most of the time. Tr. 928. In early 2021, Plaintiff was "working to challenge [himself] to sign up for college courses when enrollment opened" for the Fall. Tr. 1022, 1038.

At the May 12, 2021 hearing, Plaintiff reiterated his hope of registering for classes in diagnostic imaging. Tr. 53. At the time of the hearing, Plaintiff had his driver's permit and anticipated testing for his driver's license in the near future. Tr. 36. He hopes to buy his own truck "eventually." Tr. 36, 52. Plaintiff and his brother had recently made trips to Bend and Salem to test drive trucks. Tr. 52. Plaintiff would also like to buy a home one day. Tr. 52.

The ALJ, however, found that these activities were "not consistent with a debilitating anxiety condition." Tr. 21. To "conclude that a claimant's daily activities warrant an adverse credibility determination," the ALJ must make specific findings that (1) the activities contradict

the Plaintiff's testimony and (2) that the activities "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Neither condition is met here. The medical evidence, including treatment notes from Plaintiff's counselor, as well as the results of the MCMI-IV assessment, supports Plaintiff's testimony that his anxiety and panic attacks hinder his attempts at employment. The record shows that Plaintiff struggles to attend therapy and grocery shop, even with therapeutic and family support. This activity is not consistent with a 40-hour-a-week full-time job. Minimal activities do not contradict allegations of disability, nor do they meet the "threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff should not be denied benefits for attempting to engage in the community and maintaining some level of productivity in his life. *See Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). One "need not vegetate in a dark room in order to be eligible for benefits." *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) *superseded on other grounds*, (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)) (internal quotation marks omitted).

### III. Lay Witness Testimony

Plaintiff also argues that the ALJ failed to give germane bases for rejecting the statements of Plaintiff's mother and brother. Pl.'s Br. 18–19. Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511 (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and

family members."). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Plaintiff's mother provided two statements. On December 19, 2018, she stated that Plaintiff "does not do good with people" and "when he works . . . he will have an anxiety attack and cannot function as a normal person." Tr. 283. In a letter dated March 1, 2021, Plaintiff's mother stated that "[h]is temper can flare up really easily." Tr. 330. She elaborated, stating that Plaintiff "cannot stand to be around too many people at one time. He becomes anxious and can't do whatever task he was doing. He will for the most part walk away. If you ask [Plaintiff] to complete a task he will walk away and do the opposite of what was asked of him. He never seems to complete anything." Tr. 330. Plaintiff's brother also submitted a statement, noting that, as a child, Plaintiff "would have out bursts over the smallest of things." Tr. 329. Plaintiff's brother also noted that this behavior has worsened over time and that Plaintiff is more confrontational and "loses control over his temper still over the littlest things. . . . His brain does not process feelings like normal he has 2 settings standoff and super Angry." Tr. 329.

The ALJ characterized the lay witness evidence as "indicating that the claimant has long struggled with social interaction" and then found that the evidence was "contradicted by claimant's recent work history, as well as the claimant's own statement during a therapy session that he 'used to be extremely social up until age 22.'" Tr. 21. The ALJ also found lay witness

10 – OPINION AND ORDER

statements were "not fully consistent with the demonstrated abilities and activities of the claimant, such as shopping for and test driving vehicles, and monitoring stock investments." Tr. 21. As noted above, to the extent that the ALJ used Plaintiff's unsuccessful work attempt to discredit lay witness testimony, this was harmful error. Further, Plaintiff's brother and mother both note that Plaintiff's struggles have increased over time, consistent with Plaintiff's self-assessment that he used to be more social. And finally, for similar reasons as to Plaintff's subjective symptom testimony, the fact that Plaintiff occasionally shops and would like to purchase a truck or home one day is not a germane reason to discredit lay witness testimony. The statements from Plaintiff's mother and brother corroborate Plaintiff's subjective symptom testimony.

## IV.     Statement from Plaintiff's Treating Mental Health Providers

Plaintiff's treating counselor, Heather Hodel, LPC-Intern, and her supervisor, Christopher Smith, PhD, submitted a one-page statement addressing Plaintiff's diagnoses and challenges in maintaining employment. Tr. 942. They noted that Plaintiff's attempts at employment "have been severely hindered or ceased due to high anxiety, panic attacks, and oppositional defiant behavior." Tr. 942. Elaborating, they stated that "[s]evere panic attacks were evident during sessions, as well as reported to occur both in public spaces and in [Plaintiff's] place of residence." Tr. 942. They also opined that Plaintiff "is currently unable to work part-time or full-time." Tr. 942.

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discrediting this "medical opinion." Pl.'s Br. 5–13. The Commissioner, on the other hand, argues that this statement was not a medical opinion. Def.'s Br. 6–7.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in" certain abilities, such as the "ability to perform physical demands of work activities" and the "ability to perform mental demands of work activities, such as . . . responding appropriately to supervisors, co-workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2). Notably, statements that a Plaintiff is disabled or unable to work are inherently neither valuable nor persuasive and an ALJ need not provide any analysis about how such statements were considered. 20 C.F.R. § 404.1520b(c)(3)(i).

By contrast, "other medical evidence" includes "judgments about the nature and severity of [a claimant's] impairments" and information about a claimant's diagnoses, treatment, and prognosis. 20 C.F.R. § 404.1513(a)(3). Excluding the opinions about Plaintiff's ability to work, the remainder of counselor Hodel's and Dr. Smith's statement falls under "other medical evidence" and the ALJ did not commit legal error by failing to articulate whether it was persuasive nor by failing to address the supportability or consistency of the statement. However, the statement, as well as counselor Hodel's treating notes and the other medical evidence, further corroborates Plaintiff's subjective symptom testimony.

V.     **Benefits or Further Proceedings**

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits

can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ failed to provide sufficient reasons for discounting Plaintiff's subjective symptom testimony. Credited as true, these opinions combined with the vocational expert's testimony establish that Plaintiff is disabled under the Act. The vocational expert testified that, in his experience, "a worker being away from their work station outside of regular scheduled breaks and lunch, would be counseled to correct that problem and if that pattern of behavior or need for additional unscheduled breaks persisted they would be terminated. So it would be basically a one strike you are out kind of situation." Tr. 58. This testimony is consistent with Plaintiff's experience during his unsuccessful work attempt. Because of Plaintiff's anxiety, recurrent panic attacks, and oppositional defiant behavior, Plaintiff is disabled under the Act. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this case is remanded for award of benefits.

IT IS SO ORDERED.

DATED this 12th day of June, 2023.

s/ Michael J. McShane
Michael J. McShane
United States District Judge